# ASSET PURCHASE AGREEMENT

ASSET PURCHASE AGREEMENT (the "Agreement") made as of this 19th day of December, 2022, by and between Janice G. Marsh, Chapter 7 Trustee (the "Seller" or the "Trustee") of the bankruptcy estate (the "Estate") of Harmonus, Inc. (the "Debtor"), Ch. 7 Case No.: 21-40444-EDK pending in the United States Bankruptcy Court for the District of Massachusetts (the "Bankruptcy Court") and Bliu Associates, LLC or its nominee (the "Buyer").

A. On June 10, 2021 (the "Petition Date'), the Debtor filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et. al. (the "Bankruptcy Code") in the Bankruptcy Court;

B. The Debtor was in the business of commercializing prostate biopsy technology developed and clinically tested at a Boston teaching hospital;

C. The Buyer desires to purchase the Debtor's intellectual property and related assets relating to its prostate biopsy technology.

D. The Trustee wishes to sell, convey and transfer, and the Buyer wishes to purchase substantially all of the Debtor's assets.

NOW THEREFORE, the SELLER and BUYER agree as follows:

## ARTICLE I
### Purchase the Debtor's Assets Free and Clear; Purchase Price

1.1 **Purchase and Sale of Debtor's Assets.** Seller agrees to sell and assign to Buyer and Buyer agrees to purchase at the Closing as provided herein all of Seller's right, title and interest in, to and under the following assets (collectively, the "Purchased Assets"):

(a) All of Seller's right, title and interest in and to all US and foreign registered and unregistered copyrights, trademarks, trade names, service marks, patents (including, without limitation, the patents listed in the Patent Assignment), Universal Resources Locators (a.k.a. domain names), and all applications for and common law rights to the foregoing, related to the Seller's business;

(b) All of Seller's right, title and interest in and to all trade secrets, common law rights, privileges, franchises, memberships, confidential or proprietary information, technology, drawings, engineering specifications, ideas, methods, know-how, techniques, research, software, computer programs, product designs, plans, business plans, research papers, discoveries, improvements or developments, whether patentable or not patentable (including all licenses with respect thereto), of or relating to the Seller's business, including without limitation, ProBX software and hardware, CAD drawings of the Hardware (HPS-001 Patient Support, HGS-001 Probx Grid with Calibrator), Software Code of the software (HSS-001, Harmonus ProBX software), QA/QC record of the hardware and software regulatory files (Final 510K eCopy and source documents), policy and working documents on Harmonus Quality Procedure;

(c) All lists of customers, all records, names and addresses of expires and prospects, artwork templates and copy, correspondence and records and all copies thereof, sales and marketing documents, advertising and promotional materials, forms and other property, tangible or intangible, owned and/or used by Seller in connection with the Seller's business, whether or not reflected on Seller's books of account;

(d) All supplies and sundry items, including telephone numbers, key and lock combinations, computer software and all other software programs and systems, to the extent of Seller's interest, records relating to past, present and future customers, packing supplies, mold and other inventory (including, without limitation, 30 x GS-001 Probx Grid with Calibrator, 1 x HPS-001 Patient Support), and books and records of, or relating to and material to the operation of the Seller's business and the Purchased Assets;

(e) The Seller's computer hardware and other articles of personal property, whether or not on or off the books of the Seller, used or usable in connection with the Seller's business;

(f) All goodwill of the Seller relating to the Seller's business;

(g) All claims, judgments, demands and rights of the Seller against third parties relating to the Seller's business, including without limitation (i) any rights or claims against third parties for infringement, misappropriation, misuse or unauthorized use of Intellectual Property and (ii) all rights under or pursuant to warranties, representations, guaranties and services contracts made by suppliers, manufacturers and contractors in connection with products or services purchased by Seller in connection with the Seller's business;

(h) All other intangible assets of Sellers' which constitute or relate to the Seller's business, whether or not referred to above.

1.2 **Purchase is Free and Clear**. The Trustee shall sell, convey and deliver the Purchased Assets free and clear of all liens, claims, interests and encumbrances.

1.3 **Purchase Price**. The Buyer agrees to pay a total purchase price (the "Purchase Price") of SIXTY THOUSAND DOLLARS and 00/100 ($60,000) in cash as consideration for the sale, conveyance, and transfer of the Purchased Assets.

1.4 **Deposit**. The Buyer has paid to the Seller the amount of SIX THOUSAND DOLLARS and 00/100 ($6,000) as a deposit on the Purchase Price (the "Deposit") in conjunction with the execution of this Agreement. The Seller shall hold the Deposit pending Bankruptcy Court approval of the sale to the Buyer. The Deposit is refundable if the Trustee sells the Purchased Assets to a party other than the Buyer or if the Bankruptcy Court does not approve the Trustee's sale of the Purchased Assets to the Buyer on or before February 28, 2023.

1.5 **Payment of the Purchase Price.** At Closing, the Deposit shall be released to the Seller, and to the extent that a higher purchase price than the Purchase Price is offered by the

Buyer and approved by the Bankruptcy Court following competitive bidding on the Purchase Assets, as set forth herein, then the Buyer shall deliver the balance owed to the Seller in immediately available funds (the "Balance").

1.6. **Buyer's Default**. If the Buyer shall fail to fulfill its obligations herein of the Deposit shall be retained by the Seller as liquidated damages, and this shall be Seller's sole and exclusive remedy in both equity and at law.

## ARTICLE II
## The Closing

2.1. **Closing.** A closing shall take place at the office of Morse Law LLP, City Point, 480 Totten Pond Road, 4th Floor, Waltham, MA 02451 within twenty one (21) days after the entry of an order allowing the Sale Motion (as defined in Section 4.1), unless otherwise agreed in writing by the Buyer and Seller, or an order is entered staying the sale, but in no event later than February 28, 2023 (the "Closing" or the "Closing Date").

2.2 **Conveyances at Closing**.

(a) At the Closing, in connection with effectuating and consummating the transactions contemplated hereby, the Seller shall, to the extent necessary to deliver title, in the Buyer's reasonable discretion, deliver the following to the Buyer and Buyer shall counter-sign, where applicable:

(i) A certified copy of the Sale Order (as hereinafter defined);
(ii) A Bill of Sale for the Purchased Assets;
(iii) A Patent Assignment in substantially the form attached hereto as Exhibit A (the "Patent Assignment"); and
(iv) Such other instruments as shall be reasonably requested by the Buyer to vest in the Buyer title in and to the Purchased Assets in accordance with the provisions hereof and the order approving the sale.

(b) At the Closing, and in connection with effectuating and consummating the transactions contemplated hereby, the Buyer shall deliver the Balance, if any, by wire transfer of immediately available funds.

(c) The form of any documents to be delivered hereunder shall be in a form and substance and shall be executed and delivered in a manner reasonably satisfactory to the Buyer and Seller.

2.3 **Further Assurances.** Following the Closing, each of the parties hereto shall execute and delivery such additional documents, instruments, conveyances, and assurances, and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement.

3

## ARTICLE III
### Representations and Warranties

3.1 **No Representations and Warranties as to Annuity**. The Buyer acknowledges that the Purchased Assets are being sold "AS IS" and "WHERE IS" and "HOW IS" without any representations or warranties by the Seller.

3.2 **Financing**. At Closing, the Buyer represents and warrants that it will have sufficient cash on hand to deliver the Balance. The closing of any financing shall not be a condition to the Closing of the transactions contemplated by this Agreement.

3.3 **Authority of the Parties.** Each of the undersigned parties represents and warrants to the other that: (a) he, she or it has the necessary power and authority to execute and deliver this Agreement and to perform the respective obligations hereunder; (b) this Agreement had been duly and validly delivered, and constitutes a legal, valid and binding obligation; and (iii) except for approval of the Bankruptcy Court, no authorization consent, approval or other action is or will be necessary as a condition to execution and delivery of this Agreement and the performance of the obligations hereunder.

3.4 **Brokers**. Each of the undersigned parties represents and warrants that no person is entitled to any brokerage, finders' or similar fee or commission in connection with the transactions contemplated by this Agreement.

## ARTICLE IV
### Conditions to Seller's Obligations

The obligations of the Seller to consummate the transaction contemplated hereby is subject, in the reasonable discretion of the Seller, to the satisfaction, on or prior to the date of the Closing, of each of the following conditions:

4.1 **Bankruptcy Court Approval**. In accordance with the provisions of the Bankruptcy Code, Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Federal Rules", and Rule 6004-1 of the Local Bankruptcy Rules of the Bankruptcy Court (the "Local Rules"), the Trustee's sale of the Purchased Assets to the Buyer is subject to higher and better offers, and the obligations of the Trustee to sell, transfer and deliver the Purchased Assets are expressly conditioned upon the approval by the Bankruptcy Court of the Trustee's motion seeking authority to sell the Purchased Assets to the Buyer (the "Sale Motion") for the Purchase Price or such higher amount as may be determined following competitive bidding for the purchase of the Purchased Assets

4.2 **Entry of Sale Order**. The Bankruptcy shall have entered an order in Bankruptcy Court in form and substance reasonably satisfactory to both Seller and Buyer: (a) approving the sale transfer, assignment and assumption, as appropriate, of the Purchased Assets upon the terms and conditions set forth herein, free and clear of any and all liens, claims, encumbrances and interests of any kind and nature whatsoever; (b) providing that any and all valid liens, claims and encumbrances shall attached to the Purchase Price at Closing; and (c) containing findings that all

applicable notice and hearing requirements for the sale from the Seller to Buyer under the Bankruptcy Code, Bankruptcy Rules and any local rules of the Bankruptcy Court have been satisfied, the sale is in the best interests of the Debtor's Estate and its creditors, and the Buyer is a good faith purchaser pursuant to §363(m) of the Bankruptcy Code and that there have been no agreements between the Buyer and any third parties regarding the Purchased Assets that falls within the ambit of §363(m) of the Bankruptcy Code (the "Sale Order").

4.3    **Instruments of Conveyance**. The Buyer shall have executed and delivered to Seller at Closing all of the documents provided for in Section 2.2 hereof.

4.4    **Payment of Purchase Price**. Buyer shall have paid the Purchase Price, including any Balance, to Seller in immediately available funds.

## ARTICLE V
## Conditions to Buyer's Obligations

The obligations of the Buyer to purchase the Purchased Assets and to consummate the transactions contemplated hereby are subject, in the reasonable discretion of the Buyer, to the satisfaction, on or prior to the date of the Closing.

5.1    **Filing of Motion**. As soon as practicable following the execution of this Agreement, Seller shall file the Sale Motion, which shall include a request for approval of the Termination Fee set forth in Article VI hereunder.

5.2    **Entry of Sale Order**. The Sale Order shall be entered by the Bankruptcy Court in a form and substance reasonably acceptable to the Buyer and the Sale Order shall have become Final Order, which has not been rescinded, stayed or vacated and which is in full force. The term "Final Order" as used in this Agreement shall mean, an order, judgement or other decree, the operation of which has not been reversed, stayed or modified or amended.

5.3    **Instruments of Conveyance**. The Seller shall have executed and delivered to Buyer, as applicable, at the Closing all of the documents provided for in Section 2.2.

## ARTICLE VI
## Termination

6.1    **Termination**. In addition to any other rights of termination of Buyer expressly provided in this Agreement, this Agreement may be terminated prior to the Closing:

(i)    by the mutual written consent of Buyer and Seller (subject to the approval of the Bankruptcy Court) at any time, in which case the Deposit shall be returned to Buyer;

(ii)    by Buyer if (A) Buyer is not the winning bidder at the hearing on the Sale Motion, or (B) one or more of the conditions set forth in Article V are not satisfied on or before the date specified or the Closing Date (as the case may be) for any reason

5

          other than a breach of this Agreement by Buyer, and in each such case the Deposit shall be returned to the Buyer;

(iii)       by Seller (A) if Buyer is not the winning bidder at the hearing on the Sale Motion, or (B) if the conditions set forth in 4.1 and 4.2 are not satisfied on the Closing Date, through no fault of the Seller, and in each case the Deposit thereon shall be immediately returned to the Buyer; or

(iv)       by Seller if a breach of this Agreement by Buyer occurs in which case the Deposit shall be paid to and retained by Seller which shall by the Seller's sole remedy in both equity and at law.

      6.2    **Event of Termination; Remedies**. In the event of termination of this Agreement pursuant to Section 6.1: the rights and obligations of the parties hereto under this Agreement shall terminate (other than the provisions of this Section) and there shall be no liability of any party hereto to any other party hereunder and each party hereto shall bear its own expenses incurred in connection with the negotiation, preparation, execution and performance of this Agreement.

### ARTICLE VII
### Miscellaneous

      7.1    **Nonrecourse**. The Trustee is executing this Agreement in a fiduciary capacity; only the Estate shall be bound, and the Trustee shall not be personally liable for any obligation, expressed or implied, hereunder.

      7.2    **Liability to Trustee, Shareholder, Beneficiary, Etc**. If the Seller or Buyer executes this Agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the Seller or Buyer so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder.

      7.3    **Entire Agreement**. This Agreement shall constitute the complete agreement and understanding of the parties hereto with respect to the transactions contemplated hereby and supersedes all prior agreements and understandings, written or oral, and may be amended only by written instrument signed by both of them. To the extent that there is any conflict between the terms of the Sale Motion or the Notice of Sale served in accordance with Section 363 of the Bankruptcy Code and this Agreement, the terms of this Agreement shall control. To the extent that there is any conflict between the terms of this Agreement and the Sale Order, the terms of the Sale Order shall control.

      7.4    **Construction**. The headings and captions of the various Articles and Sections of this Agreement have been inserted solely for purposes of convenience, are not part of this Agreement, and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement. The terms "hereby", "hereof", "hereto", "hereunder" and any

similar terms as used in this Agreement, refer to this Agreement in its entirety and not only to the particular portion of this Agreement where the term is used.

    7.5    **Choice of Law; Jurisdiction**. This Agreement shall be construed in accordance with the laws of the Commonwealth of Massachusetts and the Bankruptcy Code. The parties hereto irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court (or any court exercising appellate jurisdiction over the Bankruptcy Court) over any dispute arising out of or relating to this Agreement and any other agreement or instrument contemplated hereby or entered into in connection herewith, or any of the transactions contemplated hereby or thereby and any such dispute shall be deemed to have arisen in the Commonwealth of Massachusetts

    7.6    **Execution in Counterparts**. This Agreement may be executed in any number of counterparts each of which may be executed by less than all parties, each of which shall be enforceable against the parties actually executing such counterparts, and all of which together shall constitute one instrument.

    7.8    **Advice of Counsel**. The Buyer confirms that Beatrice Liu, in her capacity as Manager of the Buyer and upon behalf of the Buyer has had the opportunity to obtain the advice of counsel of her choice in connection with the execution of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement in two counterparts on the day and year first above written.

The Buyer and Seller hereby agree to the terms set forth above.

Bliu Associates, LLC

_____  
Janice G. Marsh, Chapter 7 Trustee of  
Harmonus, Inc.

_____  
By: Beatrice Liu,  
It's Manager  
Duly Authorized

Exhibit A

**PATENT ASSIGNMENT**

This PATENT ASSIGNMENT (this "ASSIGNMENT"), dated as of December __, 2022, is made and entered into by and between, Janice Marsh, Chapter 7 Trustee for the bankruptcy estate of Harmonus Inc. (hereinafter "ASSIGNOR"), a Chapter 7 Debtor under Case No. 21-40444-EDK pending in the United States Bankruptcy Court for the District of Massachusetts Central Division, on the one hand, and Bliu Associates, LLC  (hereinafter "ASSIGNEE"), a duly organized limited liability company with an address of  at 360 East 88th Street, #42B, New York, New York 10128, on the other hand.  Unless otherwise defined herein, all capitalized terms used in this Assignment shall have the meanings set forth in that certain Asset Purchase Agreement, dated as of December __, 2022, by and between Assignor and Assignee (hereinafter, "ASSET PURCHASE AGREEMENT").

WHEREAS, Assignor has acquired rights in the subject matter disclosed in certain patent applications and/or granted Letters Patent as indicated in **Exhibit A** attached hereto (hereinafter "PATENT RIGHTS"); and

WHEREAS Assignee desires to acquire an interest therein in accordance with agreements duly entered into with ASSIGNOR;

WHEREAS, concurrently with the execution and delivery of this Assignment, Assignor and Assignee are consummating the transaction contemplated by the Asset Purchase Agreement;

NOW, THEREFORE, to all whom it may concern be it known that for and in consideration of said agreements and of other good and valuable consideration, the receipt of which is hereby acknowledged, ASSIGNOR has sold, assigned and transferred and by these presents does hereby sell, assign and transfer unto said ASSIGNEE, its successors, assigns and legal representatives, its entire right, title and interest in and throughout the United States of America, its territories and all foreign countries, in and to said PATENT RIGHTS, together with its entire right, title and interest in and to said PATENT RIGHTS and foreign counterparts and such Letters Patent issued or as may issue in whole or in part thereon, and any reissue and continuing applications and foreign counterpart applications thereof as well as any Letters Patent issued or issuing in whole or in part thereon, and including the right to claim priority under any applicable statute, treaty or convention based on said PATENT RIGHTS; said PATENT RIGHTS to be held and enjoyed by said ASSIGNEE for its own use and behalf and for its successors, assigns and legal representatives, to the full end of the term for which said Letters Patent may be granted as fully and entirely as the same would have been held by ASSIGNOR had this assignment not been made; ASSIGNOR hereby conveys all rights arising under or pursuant to any and all international agreements, treaties or laws relating to the protection of industrial property by filing any applications for Letters Patent containing said PATENT RIGHTS, all choses in action pertaining to the applications or Letters Patent including the right to sue for and collect damages and other recoveries for past infringement thereof, all rights to initiate proceedings before government and administrative bodies, and all files, records and other materials arising from the prosecution, exploitation, or defense of rights and registrations

pertaining to the applications or Letters Patent.  ASSIGNOR hereby acknowledges that this assignment, being of its entire right, title and interest in and to said PATENT RIGHTS, carries with it the right in ASSIGNEE to apply for and obtain from competent authorities in all countries of the world any and all Letters Patent by attorneys and agents of ASSIGNEE's selection and the right to procure the grant of all such Letters Patent to ASSIGNEE for its own name as assignee of the entire right, title and interest therein;

AND, ASSIGNOR hereby further agrees for itself and its executors and administrators to execute upon request any other lawful documents and likewise to perform any other lawful acts which may be deemed necessary to secure fully the aforesaid PATENT RIGHTS to said ASSIGNEE, its successors, assigns and legal representatives, but at its or their expense and charges, including the execution of applications for patents in foreign countries, and the execution of substitution, reissue, divisional or continuation applications and preliminary or other statements and the giving of testimony in any interference or other proceeding in which said invention or any application or patent directed thereto may be involved;

AND, ASSIGNOR does hereby authorize and request the Commissioner of Patents of the United States and/or any foreign patent offices to issue such Letters Patent as shall be granted upon said PATENT RIGHTS to said ASSIGNEE, its successors, assigns, and legal representatives.

JANICE G. MARSH, ESQ., CHAPTER 7 TRUSTEE OF THE ESTATE OF HARMONUS INC.,

Signature on behalf of ASSIGNOR: _____

Printed Name: _____

Title: _____

Commonwealth of Massachusetts
County of _____

On this _____ day of _____, 2022, before me, the undersigned notary public, personally appeared _____, proved to me through satisfactory evidence of identification, which was _____, to be the person whose name is signed on the preceding or attached document in my presence.

(SEAL)                                          _____
                                                Notary Public

My commission expires_____

## Exhibit A

## Assigned Patents

| Co | Patent No. | Title | Filing Date | Application No. |
|---|---|---|---|---|
| US | | Needle Guide System and Method for Use In A Medical Procedure | 11/22/2017 | 62/589,870 |
| US | 10,925,634 | Needle Guide System for Use In A Medical Procedure | 11/19/2018 | 16/195,169 |
| PCT | | Needle Guide System for Use In A Medical Procedure | 11/19/2018 | PCT/US2018/061804 |
| US | | Custom Needle Guide Apparatus and Method and for Use in a Medical Procedure | 1/27/2016 | 62/287,637 |
| US | | Custom Needle Guide Apparatus and Method for Manufacture in a Medical Procedure | 1/27/2017 | 15/418,292 |
| PCT | | Custom Needle Guide Apparatus and Method for Manufacture in a Medical Procedure | 1/27/2017 | PCT/US2017/015420 |
| CN | | Custom Needle Guide Apparatus and Method for Manufacture in a Medical Procedure | 1/27/2017 | 201780008913 |
| JP | 2019-508108 | Method for custom needle guide apparatus and in medical procedures | 1/27/2017 | 2018-539949 |